FRANGES v GENERAL MOTORS CORPORATION

BETKER v GENERAL MOTORS CORPORATION

SCHALK v MICHIGAN SEWER CONSTRUCTION COMPANY

Docket Nos. 58369, 58832, 57356. Argued June 9, 1977 (Calendar Nos. 19, 21, 22).—Decided January 5, 1979. Appeal dismissed as to *Schalk* upon stipulation January 5, 1979 with prejudice and without costs. Rehearing denied as to *Betker* 406 Mich 1103. Appeal dismissed as to *Franges* after entry of judgment on stipulation, April 5, 1979.

The extent to which an employer's or its insurer's credit for advance payment of workmen's compensation benefits is included in computing the employer's share of the expenses (attorneys' fees and costs) of a recovery by a workmen's compensation beneficiary against a third-party tortfeasor is the question common to these cases.

Joseph Franges, Jr., was awarded workmen's compensation benefits against his employer, Darin and Armstrong, Inc., and Michigan Mutual Liability Company for injuries caused by an employee of General Motors Corporation. The claimant and Constance Franges brought an action for damages against

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 12-14, 18] 82 Am Jur 2d, Workmen's Compensation §§ 65-72, 437.

[2] 73 Am Jur 2d, Statutes §§ 148, 149, 155, 249-257.

[4] 82 Am Jur 2d, Workmen's Compensation §§ 2, 4, 347, 349.

[5, 13, 14, 18] 82 Am Jur 2d, Workmen's Compensation § 423.

[6] 82 Am Jur 2d, Workmen's Compensation § 429.

[7] 82 Am Jur 2d, Workmen's Compensation § 432.

[8] 82 Am Jur 2d, Workmen's Compensation § 437.

Workmen's compensation: Attorney's fee or other expenses of litigation incurred by employee in action against third party tortfeasor as charge against employer's distributive share. 74 ALR3d 854.

[9] 82 Am Jur 2d, Workmen's Compensation §§ 644-646.

[10, 17] 82 Am Jur 2d, Workmen's Compensation § 643.

[11] 81 Am Jur 2d, Workmen's Compensation § 71.

82 Am Jur 2d, Workmen's Compensation § 439.

[15] 81 Am Jur 2d, Workmen's Compensation § 65.

[16] 82 Am Jur 2d, Workmen's Compensation.§§ 653, 654.

[19] 81 Am Jur 2d, Workmen's Compensation §§ 2, 4.

[20] 81 Am Jur 2d, Workmen's Compensation § 28.

General Motors Corporation and the workmen's compensation insurer intervened as a plaintiff. The Wayne Circuit Court, Thomas Roumell, J., included the amount of advance workmen's compensation benefits credited to the employer in apportioning the tort recovery expenses. The Court of Appeals, M. F. Cavanagh, P.J., and R. B. Burns and Quinn, JJ., affirmed per curiam (Docket No. 25359). Michigan Mutual Liability Company appeals.

Gloria Betker, administratrix of the estate of Ralph Betker, deceased, brought an action for wrongful death against General Motors Corporation. Hardware Mutual Casualty Company, the workmen's compensation insurer for the decedent's employer, Carlson Brothers, Inc., intervened as a plaintiff. The Oakland Circuit Court, Richard D. Kuhn, J., included the amount of advance workmen's compensation benefits credited to the employer in apportioning the expenses of the tort recovery. The Court of Appeals, Danhof, C.J., and M. F. Cavanagh and M. J. Kelly, JJ., affirmed in an unpublished order (Docket No. 22625). Hardware Mutual Casualty Company appeals.

Allen and Mildred Schalk brought an action for negligence against Michigan Sewer Construction Company and others. Allen Schalk had been awarded workmen's compensation benefits against Forsyth Engineering Service, Inc.; Aetna Casualty and Surety Company, its insurer, intervened as a plaintiff in the negligence action. The Macomb Circuit Court, George R. Deneweth, J., included the amount of advance workmen's compensation benefits credited to the employer in apportioning the expenses of the tort recovery. The Court of Appeals, Bashara, P.J., and J. H. Gillis and M. F. Cavanagh, JJ., found that the trial court had incorrectly computed the apportionment but affirmed on the ground that the employee had not contested the trial court's decision (Docket No. 21083). Aetna Casualty and Surety Company appeals. *Held:*

1. The Worker's Disability Compensation Act requires the trial court to apportion the expenses of recovery against a third party between the insurer and the employee. The workmen's compensation system divides the cost of industrial injuries so that the employee absorbs a substantial portion of his loss. The act gives the claimant benefits which, added to his remaining earning ability, are intended to enable him and his family to exist without being a burden to others. Unlike tort recovery, workmen's compensation benefits are not intended to restore a claimant fully to what he has lost.

2. One of the major legislative purposes of permitting actions by an injured employee and the workmen's compensation in-

surer against a third-party tortfeasor is to provide the opportunity for full recovery by each and thereby place liability and resulting costs of the injury upon the negligent party. Since the excess received by the employee is also an "interest" of the insurer which appears at the time of the third-party tort recovery and excuses future workmen's compensation liability, the insurer must bear the cost of receiving its part of the benefit of this interest. In view, however, of the contingent quality of this interest, *payment* of the portion of total costs of the recovery is made as the interest of the insurer's credit against the future workmen's compensation benefits accrues.

3. The trial court must first determine the reasonable attorneys' fees unless there is an agreement which is not excessive under the guidelines of the court rule governing contingent attorneys' fees which may be charged in a suit for personal injury or wrongful death. The trial court is to consider (1) the value of the services performed by the attorneys, (2) the agreement each attorney had with his client, (3) the amount of work each attorney did, and (4) protection of the incentive to take third-party actions on a contingent-fee basis.

4. The statute requires a seven-step procedure to apportion the expenses of the tort recovery where the parties cannot agree upon a division. (1) The "apportionment percentage" is the total cost of recovery divided by the gross recovery. (2) The amount of workmen's compensation benefits previously paid is the amount of the insurer's reimbursement from the tort recovery. (3) The insurer's portion of the costs of recovery of its reimbursement is determined by multiplying its reimbursement recovery by the apportionment percentage. (4) The gross tort recovery less the insurer's reimbursement for workmen's compensation benefits previously paid equals the employee's recovery. (5) The employee's share of the cost of recovery is computed by multiplying the employee's recovery by the apportionment percentage. (6) The insurer's future credit for advance payment of workmen's compensation benefits, the amount actually received by the employee from the third-party tortfeasor which the insurer would otherwise have been required to pay in benefits, equals the total tort recovery less the insurer's reimbursement and the employee's share of cost of recovery. (7) Each contingent future credit to the insurer for advance payment of workmen's compensation benefits as it accrues is multiplied by a second apportionment percentage to calculate the amount of recovery expenses the insurer must pay to the employee. The second apportionment percentage is computed by dividing the employee's share of the cost of recovery by the

insurer's future credit. Each week that the employee is entitled to receive compensation benefits but for the third-party recovery, the insurer must pay this amount of recovery expenses.

5. This apportionment formula is to be applied prospectively only to those cases pending on appeal in which this issue has been specifically raised. These cases are remanded to the trial courts for redivision of the recoveries.

Remanded for further proceedings, jurisdiction retained.

Chief Justice Kavanagh added that he had signed the opinion of the Court because he was persuaded that the construction for which he wrote in an earlier case was too limited.

Justice Levin, joined by Justice Coleman, dissented. The essential purpose of the 1952 amendments to the workers' compensation act which eliminated the election of remedies by acceptance of compensation benefits was to enable workers who had received no-fault compensation under that act to obtain the benefit of a larger amount recoverable in tort from a third party at fault. It was not intended that the worker would receive *both* no-fault compensation and a tort recovery or that the worker would be relieved of the legal and other expenses of recovery borne by other injured persons who obtain a tort recovery. For over 25 years the provision of the 1952 amendments that the amount received by the worker is "an advance payment by the employer on account of any future compensation benefits" has been understood to mean that until the advance payment is exhausted no compensation benefits are payable. As a result of the decision in these cases, approximately 50% of the compensation benefit becomes payable weekly during the period of the advance payment: when the Legislature directed that the amount received by the worker be treated as an advance payment on account of *any* future compensation benefits it did not mean 50% of future payments.

1. The issue in these cases concerns the provision of the 1952 amendments that the expenses of recovery, including attorneys' fees, "shall be apportioned by the court between the parties as their interests appear at the time of said recovery". Heretofore, the employer paid expenses of recovery in the proportion of its reimbursement to the total recovery. In these cases the Court agrees that because the "balance" of the recovery relieves the employer of the obligation to make future payments of compensation benefits it should pay a higher proportion or all of the expenses, and provides a two-step allocation. Expenses of recovery are first to be apportioned, as heretofore, as of the time of the recovery, and the employer is then required to reimburse the worker weekly for expenses of recovery in respect to the

compensation that but for the advance payment would have been payable by the employer.

2. The holding of the Court manifests a conclusion that the Legislature, by the 1952 amendments, intended not only to put injured workers in as good a position as persons who had not received compensation benefits, but to put them in a far better position. One who was injured in a similar accident but not entitled to compensation would bear the entire cost of recovery and would receive less than the injured worker. The Legislature required an employer to share the expenses of recovery apparently because it was decided that the employer should absorb the expense of recovering the money actually returned to it although, as a result, it would not be fully reimbursed and the worker would receive, to that extent, more than he would have received had he not been injured on the job. The apparent reason for not requiring a further contribution by the employer to the expenses of recovery is a legislative objective to reduce the overall costs of compensation and to avoid duplicative recoveries. The Court asks the wrong question and, for that reason, reaches the wrong result when it concerns itself with the "windfall" to the employer. The saving, or "windfall", to the employer is intended. The purpose is to reduce the employer's cost as long as the worker receives no less than a similarly situated tort claimant who has no workers' compensation recovery. It is not germane that the employer receives a windfall. It is fundamental in our jurisprudence that an injured person can obtain only one recovery, however many have contributed to his loss, and he is not disadvantaged by requiring full reimbursement of the employer.

The Court does not apportion. Rather, it charges back the entire cost of recovery to the employer on an installment basis. The act simply does not provide for such a re-apportionment. It contemplates that the apportionment will be determined as of the time of recovery, that the "advance payment" will be determined after deducting the entire expenses of recovery, and that compensation payments will not again become payable until the advance payment is exhausted.

3. In giving its decision prospective effect only, the Court implicitly recognizes that it is declaring a new rule of law, a construction of the act inconsistent with the prior construction, and that the new construction may defeat the reasonable expectations of those who relied on the prior construction. It may be argued that 1965 and subsequent changes in the law enlarging the level of benefits and lengthening the period

during which they are payable require ·a change in the construction of the apportionment language to harmonize the 1952 amendments with the changed circumstances resulting from the later amendments, but to reach that result, one must first conclude that the Legislature intended not only to increase the level of benefits, but also intended to reduce the amount of the employer's reimbursement for benefits theretofore paid. There is no basis for concluding that the Legislature, on account of the general enlargement of benefits, intended to further enlarge the benefits payable to those who recover in tort.

4. It is the legislative judgment that the expansion of various social welfare programs such as workmen's compensation, social security, and mandatory no-fault automobile insurance should be rationalized with the tort reparation system and other programs to avoid duplication and to keep the cost of reparations within affordable limits. A liberal construction should be placed on the language of those laws establishing entitlement so that those it was intended to benefit do benefit, but the rationalization provisions should also be liberally construed so that the legislative objective of rationalization is also implemented.

5. It was the Legislature's judgment that a worker who could recover from a third party should not be disadvantaged because he received compensation benefits, but also that he should not be better off. He should not be able to keep both the tort recovery and his compensation benefits. The amount paid by the employer, which in tort litigation would have reduced the amount payable by the third party, should instead be paid to the employer to reduce the overall cost of compensation and at the same time eliminate duplicative recovery.

Justice Coleman added that although she had signed an opinion in a previous case which was inconsistent with Justice Levin's opinion in this case, she is now convinced that the logic and the law of Justice Levin's opinion is correct.

62 Mich App 658; 233 NW2d 825 (1975) reversed.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — EXPENSES — APPORTIONMENT.

The language of the Worker's Disability Compensation Act makes apparent the intention of the Legislature to require the trial court to apportion the recovery expenses of an action by a workmen's compensation beneficiary against a third-party tortfeasor (MCL 418.827[6]; MSA 17.237[827][6]).

2. Statutes — Construction.

Statutes should be construed to prevent absurdity, hardship, injustice, or prejudice to the public interest; it is mandatory, if possible, to construe an act as a whole to avoid construing one provision so as to negate another.

3. Workmen's Compensation — Statutes — Construction — Third-Party Action — Expenses — Apportionment.

The provision of the Worker's Disability Compensation Act governing the apportionment of the recovery expenses of an action by a workmen's compensation beneficiary against a third-party tortfeasor must be construed in light of the legislative purpose for providing for recovery against third-party tortfeasors (MCL 418.827[6]; MSA 17.237[827][6]).

4. Workmen's Compensation — Benefits — Remedies.

The workmen's compensation system, unlike tort recovery, does not restore to the claimant what he has lost; it gives him benefits which, added to any remaining earning ability, are intended to enable the claimant and his family to exist without being a burden to others.

5. Workmen's Compensation — Third-Party Action — Legislative Intent.

One of the major legislative purposes of permitting actions by an injured employee and the workmen's compensation insurer against a third-party tortfeasor is to provide the opportunity for full recovery by each and thereby place liability and resulting costs of the injury upon the negligent party (MCL 418.827; MSA 17.237[827]).

6. Workmen's Compensation — Third-Party Action — Expenses — Apportionment.

Excess workmen's compensation benefits received by an employee are also an "interest" of the workmen's compensation insurer which appears at the time of a third-party tort recovery and excuses future workmen's compensation liability; the insurer must bear the cost of receiving its part of the benefit of this interest (MCL 418.827[6]; MSA 17.237[827][6]).

7. Workmen's Compensation — Third-Party Action — Expenses — Apportionment — Advance Payment.

Payment of a workmen's compensation insurer's apportionment of total costs based on gross recovery in a third-party tort action is made as the interest of the insurer's credit against future workmen's compensation benefits accrues (MCL 418.827[5], 418.827[6]; MSA 17.237[827][5], 17.237[827][6]).

8. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — ATTORNEY
   FEES — APPORTIONMENT.

   The trial court is charged by statute with determining reasonable
   expenses of recovery, including attorney fees, in an action by a
   workmen's compensation beneficiary or insurer against a third-
   party tortfeasor; in making the determination of the reasonable
   total attorney fees, the trial court should be guided by the
   court rule which establishes reasonable limits of the contin-
   gency fees that may be charged in a suit for personal injury or
   wrongful death; if the attorneys have agreed upon a division of
   fees which is not excessive under the court rule, the trial court
   should abide by the agreement (MCL 418.827[6]; MSA
   17.237[827][6]; GCR 1963, 928).

9. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — ATTORNEY
   FEES — APPORTIONMENT.

   Division of attorney fees between the plaintiff's attorney and the
   attorney for a workmen's compensation insurance carrier
   which intervened in an action by a workmen's compensation
   beneficiary against a third-party tortfeasor is made by the trial
   court, which is to consider (1) the value of the services per-
   formed by the attorneys, (2) the agreement each attorney had
   with his client, (3) the amount of work each attorney did, and
   (4) protection of the incentive to take third-party actions on a
   contingent-fee basis (MCL 418.827[6]; MSA 17.237[827][6]).

10. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — EXPENSES
    — APPORTIONMENT — ADVANCE PAYMENT.

    The Worker's Disability Compensation Act requires a seven-step
    procedure to apportion the expenses of recovery in a third-
    party tort action where the parties cannot agree upon a divi-
    sion: (1) the "apportionment percentage" is the total cost of
    recovery divided by the gross recovery, (2) the amount of
    workmen's compensation benefits previously paid is the amount
    of the insurer's reimbursement from the tort recovery, (3) the
    insurer's portion of the costs of recovery representing its reim-
    bursement interest is its reimbursement for benefits previously
    paid multiplied by the apportionment percentage, (4) the gross
    tort recovery less the insurer's reimbursement for workmen's
    compensation benefits previously paid equals the employee's
    recovery, (5) the employee's share of the costs is the employee's
    recovery multiplied by the apportionment percentage, (6) the
    insurer's future credit for advance payment of workmen's
    compensation benefits, the amount actually received by the
    employee from the third-party tortfeasor which the insurer
    would otherwise have been required to pay in benefits, equals

the total tort recovery less the insurer's reimbursement and the employee's share of cost of recovery, (7) each contingent future credit to the insurer for advance payment of workmen's compensation benefits, as it accrues, multiplied by the apportionment percentage, determines the amount of the recovery costs the insurer must pay the employee for future compensation as it accrues (MCL 418.827[6]; MSA 17.237[827][6]).

OPINION BY KAVANAGH, C.J.

See headnotes 1-10.

11. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — EXPENSES
    — APPORTIONMENT.

*A statutory construction that a workmen's compensation carrier which intervenes in an employee's action against a third-party tortfeasor shall pay that portion of the expenses of recovery which bears the same relationship to the total expenses as the amount of the reimbursement for workmen's compensation benefits previously paid, before reduction on account of such portion, bears to the amount of the recovery, before reduction on account of such total expenses, does not extend far enough.*

DISSENTING OPINION BY LEVIN, J.

12. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — BENEFITS
    — REMEDIES.

*The essential purpose of the 1952 amendment to the dual liability provision of the Worker's Disability Compensation Act was to enable workers who had received no-fault compensation under that act to obtain the benefit of a larger amount recoverable in tort from a third party at fault; it was not intended that the worker would receive both remedies or, in contrast with other injured persons who obtain tort recoveries, that the worker would be relieved of the impact of the legal and other expenses of recovery (1952 PA 155, now MCL 418.827; MSA 17.237[827]).*

13. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — BENEFITS
    — REMEDIES.

*The purpose of the dual liability provision of the Worker's Disability Compensation Act was to put the worker with a cause of action against a third-party tortfeasor in as good a position as a person injured under similar circumstances who is not entitled to workers' compensation, not to put him in a considerably better position; it was sought to accomplish that purpose in a manner which would tend to reduce the overall*

cost of workers' compensation and avoid duplicative recoveries
(MCL 418.827; MSA 17.237[827]).

14. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — ADVANCE
PAYMENT — BENEFITS — REMEDIES.

The provision of the Worker's Disability Compensation Act that
the amount received by a worker in a third-party action for
tort is "an advance payment by the employer on account of any
future payment of compensation benefits" means that until the
advance payment is exhausted no workers' compensation bene-
fits are payable; when the Legislature made that direction it
did not mean 50% of future workers' compensation payments
should become payable weekly during the period of the advance
payment through the apportionment of expenses of the third-
party action (MCL 418.827; MSA 17.237[827]).

15. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — DAMAGES
— EXPENSES — APPORTIONMENT.

An injured worker is entitled to only one recovery, however many
feasors contributed to the loss; therefore, he is not disadvan-
taged by requiring, out of any recovery against a third-party
tortfeasor, full reimbursement of the employer, who may or
may not have been at fault, for workers' compensation benefits
paid (MCL 418.827; MSA 17.237[827]).

16. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — EXPENSES
— APPORTIONMENT.

The Worker's Disability Compensation Act does not provide for a
"reapportionment" of the expenses of a recovery against a
third-party tortfeasor by charging the worker's apportioned
share of the expenses back to the employer on an installment
basis; the courts must implement the result chosen by the
Legislature rather than declare another approach as "a more
equitable view" (MCL 418.827; MSA 17.237[827]).

17. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — EXPENSES
— APPORTIONMENT.

The Worker's Disability Compensation Act contemplates that the
expenses of a third-party tort action will be apportioned be-
tween the parties as of the time of the recovery, not that all of
the expenses will be charged to one party; the "balance" or
"advance payment" of workers' compensation benefits will be
determined after deducting the entire expenses of recovery, and
workers' compensation benefits will not again become payable
in any form or manner until the "balance" or "advance pay-
ment" is exhausted (MCL 418.827; MSA 17.237[827]).

18. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — BENEFITS.

There is no basis for concluding that the Legislature, on account of the general enlargement of workers' compensation benefits in 1965 and since, intended to further enlarge benefits payable to those who recover in tort by reducing the amount of the employer's reimbursement for workers' compensation benefits theretofore paid (1965 PA 44; MCL 418.355; MSA 17.237[355]).

19. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — LEGISLATIVE INTENT.

The legislative judgment is that the expansion of various social welfare programs, whether financed through specific taxes (such as Social Security), general tax revenues, or mandatory employers' or users' contributions in the form of insurance premiums, should be rationalized with the tort reparation system and other programs to avoid duplication and to keep the cost of reparations within limits that consumers and those who work can afford and are willing to pay for the support of those who cannot as a result of injury or other misfortune (MCL 418.827, 500.3109, 500.3109a; MSA 17.237[827], 24.13109, 24.13109[1]).

20. WORKMEN'S COMPENSATION — STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

A liberal construction should be placed on the language of the no-fault Worker's Disability Compensation Act, and other laws establishing entitlement to social welfare benefits, so that those it was intended to benefit do benefit; but it does not detract from a liberal construction of the entitlement provisions to also liberally construe the provisions which rationalize those benefits with other available benefits and remedies so that the legislative objective of rationalization is also implemented and not defeated by the commitment which attorneys and judges have to the tort system, or a concern that the level of no-fault workmen's compensation benefits inadequately compensates injured persons (MCL 418.827; MSA 17.237[827]).

DISSENTING OPINION BY COLEMAN, J.

See headnotes 12-20.

*Dice, Sweeney, Sullivan & Feikens, P.C.,* and *Sam W. Thomas, P.C. (E. R. Winham,* of counsel), for Joseph Franges, Jr., and Constance Franges.

*Wells, Wilmoth, Keating & Nitz, P.C.,* for Gloria Betker.

*Frederick Zizelman, Jr. (S. Lee Elliott,* of counsel), for Allen Schalk.

*Bolanowski, Brennan & O'Toole, P.C.,* for Michigan Mutual Liability Company.

*Moore, Sills, Poling, Wooster, Sinn & Taylor, P.C.,* for Hardware Mutual Casualty Company.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.,* for Aetna Casualty and Surety Company.

Amicus Curiae:

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Thomas P. Chuhran),* for Great Lakes Steel Division of National Steel Corporation.

BLAIR MOODY, JR., J. We granted leave to appeal and consolidated the following three cases: *Franges v General Motors Corp,* 398 Mich 810 (1976); *Schalk v Michigan Sewer Construction Co,* 398 Mich 810 (1976); *Betker v General Motors Corp,* 398 Mich 810 (1976).

Each of these cases involves a recovery by an employee/personal representative and his employer/insurance carrier against a third-party tortfeasor. The common issue presented is whether and to what extent the dollar amount credited to the employer as advance payment of future workers' compensation benefits should be included in computing the share of recovery expenses (legal fees and costs) attributable to the employer or its workers' compensation insurance carrier. MCLA 418.827; MSA 17.237(827).

### FACTS

Certain common elements appear in these three cases. In each case, the intervenor, the individual workers' compensation insurance carrier, has appealed the trial court's apportionment of settlement[1] recovery expenses reached in the third-party tortfeasor action. While computing the apportionment of total expenses by slightly different methods, all three trial judges basically followed the reasoning of *Crawley v Schick*, 48 Mich App 728; 211 NW2d 217 (1973). In determining the interests of the insurance carrier, each court included the dollar amount credited as advance payment of future workers' compensation benefits.

### Franges

In February of 1970, the plaintiff, Joseph Franges, Jr., an employee of a company insured by Michigan Mutual Liability Company, sustained a work-related injury on the premises of General Motors Corporation. The Worker's Disability Compensation Bureau issued an open-end award[2] requiring plaintiff's employer through its carrier Michigan Mutual to pay workers' compensation benefits at the rate of $104 per week for Franges' life or until his disability ended.

Two years later, a third-party damage action against defendant General Motors Corporation was filed and Michigan Mutual intervened as a party plaintiff pursuant to § 827 of the Worker's Disability Compensation Act. On December 13, 1974,

---

[1] Although each of the consolidated cases involves a settlement or consent judgment, this opinion applies equally to jury and non-jury judgments.

[2] An open-end award is one which grants compensation to an employee for an indefinite period of time or so long as the facts on which the award was predicated continue.

plaintiffs-appellees[3] settled their cause of action against the defendant for $120,000 and on April 7, 1975, an opinion and order for disbursement of funds were filed by the Wayne Circuit Court as follows:

| | |
|---|---|
| Gross Recovery | $120,000.00 |
| Insurer's Reimbursement | − 27,184.03 |
| Total Cost of Recovery | − 40,807.17 |
| Advance Payment Credit | $ 52,008.80 |

The total cost of recovery was apportioned between the parties as follows:

| | |
|---|---|
| Employee's Pro Rata Share (34%) | $ 13,874.55 |
| Insurer's Pro Rata Share (66%) | 26,932.62 |
| Total Cost of Recovery | $ 40,807.17 |

The Court of Appeals in an unpublished per curiam opinion affirmed the disbursement of the trial court on March 30, 1976.

*Schalk*

Plaintiff-appellee, Allen Schalk, also received injuries during the course of his employment. Plaintiff brought a negligence action against the defendants as third-party tortfeasors and the workers' compensation insurance carrier, Aetna Casualty and Surety Company, intervened. This action resulted in a settlement of $125,000 of which plaintiff's wife, Mildred Schalk, received $15,000 and the injured plaintiff $110,000. On July 1, 1974, an order was entered apportioning the cost of recovery and approving the distribution of settlement proceeds as follows:

| | |
|---|---|
| Gross Recovery[4] | $110,000.00 |
| Insurer's Reimbursement | − 22,588.13 |
| Total Cost of Recovery | − 38,832.95 |
| Advance Payment Credit | $ 43,411.87 |

---

[3] Constance Franges, the wife of the injured employee, joined in the action but did not receive an individual award in the settlement.

[4] The gross recovery figure does not include the $15,000 amount in the settlement representing plaintiff-wife's recovery for loss of consortium.

The total cost of recovery was broken down between the parties as follows:

| | |
|---|---|
| Employee's Pro Rata Share (40%) | $ 15,533.18 |
| Insurer's Pro Rata Share (60%) | 23,299.77 |
| Total Cost of Recovery | $ 38,832.95 |

The Court of Appeals determined that the trial judge incorrectly applied the *Crawley* formula. The insurer's pro rata share should have been 64.6973% or $25,122.87, and $48,578.92 should have been treated as advance payment credit. Nevertheless, the court affirmed the awards since the employee failed to contest the decision. 62 Mich App 658; 233 NW2d 825 (1975).

## *Betker*

This cause of action arose out of the accidental death of plaintiff-appellee's husband, Ralph Betker. Mr. Betker, an employee of Carlson Brothers, Incorporated, fell 40 feet to his death while attempting to repair a heating and ventilation unit located in the defendant General Motors Corporation's Fisher Body plant. Plaintiff-administratrix, Gloria Betker, commenced a wrongful death action and Hardware Mutual Casualty Company, Carlson Brothers' workers' compensation carrier, intervened as a party plaintiff. While a trial on the merits was in progress, the parties agreed to settle the suit for $150,000. The Oakland Circuit Court's order apportioning the costs of recovery and distributing the proceeds was entered on December 12, 1974, as follows:

| | |
|---|---|
| Gross Recovery | $150,000.00 |
| Insurer's Reimbursement | − 23,825.20 |
| Total Cost of Recovery | − 57,131.99 |
| Advance Payment Credit[5] | $ 19,935.00 |

[5] Unlike the advance payment credit amounts in the *Franges* disbursement order and in the *Schalk* Court of Appeals opinion, the

The total cost of recovery was apportioned between the parties as follows:

| | |
|---|---|
| Employee's Pro Rata Share (70.83%) | $ 40,466.59 |
| Insurer's Pro Rata Share (29.17%) | 16,665.40 |
| Total Cost of Recovery | $ 57,131.99 |

On August 2, 1976, the Court of Appeals granted plaintiff-administratrix's motion to affirm the disbursement of the trial court.

## DISCUSSION

The basic issue before this Court is whether the employer or its insurance carrier in a third-party action is entitled by statute to a credit against workers' compensation benefits potentially payable in the future, without sharing the burden of the recovery expenses (attorney fees and costs).

The statutory provisions concerning litigation expenses incurred in actions against third-party tortfeasors which have been referred to the courts for interpretation fall into three general classifications:

(1) those statutory provisions which contain no express reference to attorneys' fees and costs incurred by the employee in the third-party tort action;

(2) those statutes which provide for the deduction from the third-party recovery fund of the attorneys' fees and costs incurred by the employee in the third-party litigation, but which do not expressly provide for the apportionment of such fees and costs between the employee and the employer or insurance carrier;

(3) those statutory provisions which contain an

---

$19,935 credit is not equal to the gross recovery minus the insurer's reimbursement and total cost of recovery. *Franges* and *Schalk* involve open-end compensation benefits; this case involves survivor's benefits with a specific dollar amount ceiling.

express direction that the attorneys' fees and costs incurred by the employee in the third-party tort action should be apportioned between the employee and the employer or compensation insurance carrier.

Anno: *Workmen's Compensation: Attorney's Fee or Other Expenses of Litigation Incurred by Employee in Action Against Third Party Tortfeasor as Charge Against Employer's Distributive Share*, 74 ALR3d 854.

In 25 jurisdictions, including Michigan, "when the suit is brought or recovery is effected by the employee, and sometimes in all cases, the carrier is obligated to pay a portion of the attorney's fee out of his share, usually in proportion to his share of the recovery". 2A Larson, Workmen's Compensation Law, § 74.32.[6]

Section 827 of the Worker's Compensation Act of 1969, MCLA 418.827; MSA 17.237(827), sets forth

---

[6] 2A Larson, Workmen's Compensation (Supp, 1977), § 74.32, p 14-233 lists the applicable statutes as follows:

"*Alabama:* Ala Code tit 26, § 312. *Florida:* Fla Stat Ann 440.39. *Hawaii:* Hawaii Rev Stat 386-8. *Idaho:* Idaho Code 72-223. *Illinois:* Ill Ann Stat ch 48, § 138.5 (Smith-Hurd). *Indiana:* Ind Stat Ann 22-3-2-13 (Burns). *Kansas:* Kan Stat Ann 44-504, only as to employer's subrogation suit. *Kentucky:* Ky Rev Stat 342.700. In employee's suit, employer is subrogated to entire amount less attorneys' fees. *Maryland:* Md Ann Code art 101, § 58. As to employer's suit see fn 54, *supra,* this subsection, under *Maryland. Michigan:* MCLA 418.827 [MSA 17.237(827)]. Apportionable as interests of parties appear. *Minnesota:* Minn Stat Ann 176.061. *Missouri:* Mo Ann Stat 287.150 (Vernon). *Nebraska:* Neb Rev Stat 48-118. Aliter, if no notice of suit is given. *New Hampshire:* NH Rev Stat Ann 281:14. Apportioned by court 'as justice may require'. *New Jersey:* NJ Stat Ann 34:15-40. *New York:* See reference to amendment in discussion of *Koutrakos v Long Island College Hospital* [47 AD2d 500; 368 NYS2d 528 (1975)] fn 54, *supra,* this subsection, under *New York. North Carolina:* NC Gen Stat 97-10.2. *North Dakota:* ND Cent Code 65-01-09. *Pennsylvania:* Pa Stat Ann tit 77, § 671. *Rhode Island:* RI Gen Laws Ann 28-35-58. *South Dakota:* SD Compiled Laws Ann 62-4-40. *Texas:* Texas Rev Civ Stat Ann art 8307, § 6a (Vernon). Employer pays fees of employee's attorney in employee's third-party suit. *Utah:* Utah Code Ann 35-1-62. *Virginia:* Va Code Ann 65.1-43. *Washington:* Wash Rev Code Ann 51.24.010."

the procedure that must be followed in Michigan suits against third-party tortfeasors. Subsections 5 and 6, the controlling provisions for these cases, prescribe how the judgment is to be divided. Since the Michigan statute fits firmly into the third category, we will evaluate only those interpretations of statutory provisions which contain express directions for apportionment of recovery expenses between the employee and the employer or insurer.

Within this third category of statutory provisions, three general approaches have been developed by the courts in dealing with the problem of whether the future compensation credit should be included as an interest of the insurer when computing the apportionment of fees.

One approach is that the employer's pro-rata share of expenses should be based upon the total benefit realized—including reimbursement for compensation benefits already paid to the employee and relief from future compensation liability. This view will be generically referred to as the Pennsylvania approach. It has been followed in a number of jurisdictions across the country,[7] and is the basis for the *Crawley v Schick* formula of our

---

[7] The Pennsylvania approach has been adopted by the following states: Pennsylvania, New Jersey, Nebraska, Indiana, Minnesota, Utah and Virginia. Cases holding that the insurer's future credit is to be included when apportioning recovery costs between the insurer and the employer include:

*Anderson v Twin City Lines,* 289 Minn 11; 182 NW2d 193 (1970); *Indiana State Highway Commission v White,* 259 Ind 690; 291 NE2d 550 (1973); *Zuchowski v John S. Marvin Building Co,* 197 Pa Super 520; 179 A2d 239 (1962); *Wall v Conn Welding & Machine Co,* 197 Pa Super 360; 179 A2d 235 (1962); *Caputo v Best Foods, Inc,* 17 NJ 259; 111 A2d 261 (1955); *McMullen v Maryland Casualty Co,* 123 NJ Super 248; 302 A2d 181 (1973); *Prettyman v Utah State Department of Finance,* 27 Utah 2d 333; 496 P2d 89 (1972); *Gillotte v Omaha Public Power Dist,* 189 Neb 444; 203 NW2d 163 (1973); *Sheris v Travelers Insurance Co,* 491 F2d 603 (CA 4, 1974), *cert den* 419 US 831; 95 S Ct 54; 42 L Ed 2d 56 (1974) (applying Virginia law).

own Court of Appeals. The Pennsylvania approach was generally applied in each of the instant cases by the trial court and approved by the Court of Appeals.

A second approach, which we will label the Missouri approach,[8] is that the employer's share should be based exclusively upon the amount of reimbursement for compensation benefits already paid. This approach to apportioning recovery expenses does not take into consideration credit for any future compensation liability. The rationale for adopting this second view, despite the potential windfall to the insurer in receiving future credit without incurring the normal expenses of recovering that credit, is based upon the contingent nature of the benefit to the insurer.

A recent New Jersey case[9] and a Pennsylvania Federal district court decision[10] illustrate what we believe to be a third, more equitable view. This third approach, *"pari passu"*,[11] provides a means whereby the employer and insurer pay their share as they receive their benefit *and* follows the statutory requirement that the employer and insurer

---

[8] The Missouri Supreme Court adopted this second approach in the case of *Ruediger v Kallmeyer Brothers Service,* 501 SW2d 56 (Mo, 1973).

[9] The New Jersey court in *Pagan v Hillside Metal Products, Inc,* 140 NJ Super 154, 160; 355 A2d 690, 693 (1976), applied this third approach stating:

"The obligation of the carrier to pay to petitioner a *pro rata* share of the attorney's fee only arises when a weekly payment otherwise due need not be paid due to the third-party recovery. There is no statutory basis for compelling the carrier to make payments to petitioner which it might not be required to make should the petitioner suffer an untimely demise and leave no dependents surviving."

[10] *DiVirgilio v Norton Co,* 344 F Supp 552 (WD Pa, 1972).

[11] The Latin phrase *"pari passu",* meaning by equal progress or ratably, was used by the Pennsylvania Federal district court to describe the method of reimbursement payment by the employer to the employee for recovery expenses previously paid by the employee attributable to future compensation credit as and when the credit matures. *DiVirgilio, supra,* 554.

pay a proportionate share of the recovery expenses.

Thus, in interpreting the Michigan statutory language in question, we are mindful of the three basic approaches for apportioning the costs of producing dollars which represent future compensation credit.

## STATUTORY CONSTRUCTION

Subsections 5 and 6 of MCLA 418.827; MSA 17.237(827) prescribe how the third-party judgment is to be divided:

"(5) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

"(6) Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. *Expenses of recovery shall be apportioned by the court between the parties as their interests appear at the time of the recovery.*" (Emphasis added.)

Appellant insurers argue that subsection 5 establishes the following priorities for the distribution of a recovery against a third party:

(1) deduction of recovery expenses, including attorney fees, deemed to be reasonable;

(2) reimbursement to the carrier for past benefits paid;

(3) and distribution of any balance to the employee, to be credited against any future benefits to which the employee would be entitled as a result of his injury.

In support of this priority system the insurers refer us to the Delaware statutory provisions[12] which are virtually identical to MCLA 418.827(5), 418.827(6); MSA 17.237(827)(5), 17.237(827)(6), and to the Delaware Supreme Court's interpretation of those provisions in *Cannon v Container Corp of America*, 282 A2d 614, 616 (Del, 1971). The Delaware Court held that the three priorities previously referred to were clearly established by the Delaware provisions. In addition, that Court not only approved a 100% reimbursement to the compensation carrier of monies previously paid in benefits, but further held that the insurer did not have to pay *any* portion of the costs of recovery.

We cannot accept that reasoning of the Dela-

---

[12] 19 Del Code 2363(e), 2363(f) states:

"(e) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advanced payment by the employer on account of any future payment of compensation benefits.

"(f) Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting such recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. The expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of said recovery."

ware Court which ignores completely the final sentence of subsection (f): "The expenses of recovery above mentioned shall be apportioned by the court between the parties and as their interests appear at the time of said recovery." 19 Del Code 2363(f). The mirror language in the Michigan statute is the final sentence of subsection 6: "Expenses of recovery shall be apportioned by the court between the parties as their interests appear at the time of the recovery." MCLA 418.827(6); MSA 17.237(827)(6).

The Delaware priority system does not take into account the apportionment of recovery expenses between the insurer and the employee required by the final sentences of the Delaware and Michigan statutes. Those sentences make apparent the intent of the state legislatures to require the court to apportion the recovery expenses.

On numerous occasions, this Court has discussed the rule of construction to be employed when interpreting statutory language in order to determine legislative intent. In construing legislative intent it is mandatory, if possible, to construe an act as a whole, thus avoiding the construction of one provision in such a manner as to negate another. *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420; 102 NW2d 584 (1960). Subsection 5, which spells out how judgments in third-party workers' compensation cases are to be divided, cannot be read to establish strict priorities for distribution in view of the mandatory nature of the word "shall"[13] in the final sentence of subsection 6. Such a reading of subsection 5, which establishes the system of priorities adopted in *Cannon, supra,* would render void the language of

[13] See *Smith v School District No 6, Fractional, Amber Twp,* 241 Mich 366; 217 NW 15 (1928).

subsection 6 requiring the apportionment of expenses.

Another frequently applied rule of statutory construction is that statutes should be construed to prevent absurdity, hardship, injustice or prejudice to the public interest. *Gardner-White Co v State Board of Tax Administration,* 296 Mich 225; 295 NW 624 (1941); *Zawacki v Detroit Harvester Co,* 310 Mich 415; 17 NW2d 234 (1945); *General Motors Corp v Unemployment Compensation Commission,* 321 Mich 604; 33 NW2d 90 (1948). Therefore, in order to fairly interpret the provision governing the apportionment of expenses, it is necessary for us to examine these concepts in light of the purpose for providing an opportunity for recovery against third-party tortfeasors.

Under the various state workers' compensation systems the cost of industrial injuries is shared by the employee and industry, and the employee absorbs a substantial portion of his loss. Atleson, *Workmen's Compensation: Third Party Actions and the Apportionment of Attorney's Fees,* 19 Buffalo L Rev 515, 520 (1970). As stated in Arthur Larson's classic treatise on workers' compensation law:

"A compensation system, unlike a tort recovery, does not pretend to restore to the claimant what he has lost; it gives him a sum which, added to his remaining earning ability, if any, will presumably enable him to exist without being a burden to others." 1 Larson, Workmen's Compensation Law, § 2.50.

As pointed out by Professor Allan McCoid, one of the major reasons for retention of rights against third parties, despite the general acceptance of the enterprise liability concept of workers' compensation laws, is protection of the worker and his

family. The retention of such rights acknowledges that benefits provided by existing compensation acts are not expected to be full payment for all losses suffered. McCoid, *The Third Person in the Compensation Picture: A Study of the Liabilities and Rights of Non-Employers,* 37 Texas L Rev 389, 401 (1959).

Additionally, another primary aim of this legislation is to provide the insurer a right to recover from the tortfeasor compensation expenditures. The Michigan statute provides that in the event the injured employee does not commence a third-party action within one year after the occurrence of the injury, the employer or insurer can proceed to enforce the interest of such employee.[14]

Accordingly, we believe that one of the major purposes for the Legislature permitting actions by both the injured employee and the insurer is to provide the opportunity for full recovery by each and thereby place the liability for the injury and the resulting cost upon the negligent party.[15]

Pursuant to the statute, past compensation pay-

---

[14] MCLA 418.827; MSA 17.237(827) provides in part:

"(1) * * * If the injured employee or his dependents or personal representative does not commence the action within 1 year after the occurrence of the personal injury, then the employer or carrier, within the period of time for the commencement of actions prescribed by statute, may enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of action by any party under this section, the parties shall notify, by certified mail at their last known address, the bureau, the injured employee, or in the event of his death, his known dependents or personal representative or his known next of kin, his employer and the carrier. Any party in interest shall have a right to join in the action.

"(2) Prior to the entry of judgment, either the employer or carrier or the employee or his personal representative may settle their claims as their interest shall appear and may execute releases therefor.

"(3) Settlement and release by the employee is not a bar to action by the employer or carrier to proceed against the third party for any interest or claim it might have."

[15] Accord, McCoid, *supra.*

ments made by the insurer to the employee are to be recovered by the insurer before the employee may benefit. Nevertheless, any decision on our part which would require a non-negligent injured employee to bear the full burden of recovery expenses, including a recovery that excuses a compensation insurer's future obligation, is contrary to this legislative purpose. The injured employee would thereby receive less than his full share of the recovery (after deduction of apportioned expenses).

Likewise, a determination that would obligate the insurer to pay recovery expenses attributable to amounts credited as advance payment of future compensation liability, when future compensation payments may never be required, would also be contrary to the legislative purpose. The insurer would thereby receive less than its full share of the recovery (after deduction of apportioned expenses).

We view the crux of the issue presented by these cases as being a determination of what the Legislature intended by the use of the word "interests" within the statutory language: "as their [the employee or his representative and the employer or its insurance carrier] interests appear at the time of the recovery." MCLA 418.827(6); MSA 17.237(827)(6).

Subsection 5 sets forth the three "interests" of the parties that "appear" in a recovery from a third-party tortfeasor and, thus, defines the word "interests" as it is used in the final sentence of subsection 6. The employee or his dependents or personal representative has only one interest which may appear, a lump sum dollar recovery that is treated as an advance payment of future compensation benefits. The employer or its insur-

ance carrier may receive two interests in any given third-party action. First, there is the reimbursement interest: the refunding of monies previously paid or payable as workers' compensation benefits as of the date of judgment. Additionally, a second interest appears when the dollar amount of recovery exceeds the insurer's reimbursement. That interest is a dollar amount obtained by the employee but treated by the employer or insurer as a future credit against payment of additional compensation benefits.

Since the excess received by the employee is also an interest of the insurer which appears at the time of recovery and excuses future workers' compensation liability, the insurer must bear the cost of receiving its part of the benefit of this interest. In view, however, of the contingent quality of this interest, we hold that *payment* of the apportionment percentage of total costs based upon gross recovery will be made as this interest of the insurer becomes dollars credited against compensation liability.

Accordingly, we conclude that the third view mentioned heretofore, *"pari passu"*, is the approach which best reflects the intention of the Legislature to effectuate the purposes of the Worker's Disability Compensation Act.

This conclusion is buttressed by two other considerations. First, if we were to adopt the Missouri approach, we would be requiring the trial judge to disregard completely the interest which the insurer receives as future credit. Such an approach would ignore the statutory language and give a windfall to the insurer. It would also encourage delays at the trial court level and favor employees in the metropolitan areas where clogged civil dockets delay trials for years, while disadvantaging

employees in sparsely populated areas of the state. As stated in *Kroll v Hyster Co,* 398 Mich 281, 299; 247 NW2d 561 (1976) (opinion by WILLIAMS, J.):

"If the interest of the insurer, and therefore its share of the expenses, is calculated on the basis of the amount of benefits the insurer had *paid* the employee at the time of recovery, delay becomes the ally of the employee. The longer the period of time which passes before the time of recovery, the more benefits the insurer will have actually paid at the time of recovery, and therefore the greater the share of the expenses it will have to carry. It is very difficult to believe that the Legislature intended to create a situation where an aggrieved party would be rewarded for delaying a suit until long after the cause of the grievance, and for prolonging the course of litigation.

"Moreover, employees in virtually identical situations would have substantially different recoveries because one employee brought his suit in a court where docket congestion was particularly a problem, causing an unintentional delay in the time of recovery which will in turn increase the share of the expenses the insurer will be liable for."

Conversely, the Pennsylvania view as reflected by *Crawley* and applied by the trial courts in these cases requires the trial judge in most instances to include the total net recovery initially received by the employee as an interest of the insurer when calculating the insurer's share of expenses. This could result in a potential windfall to the employee in view of the contingent nature of the future credit. The insurer could be charged for expenses but, due to happenstance, may never receive the benefit of the full advance payment credit.

Neither result is compatible with the purpose of the legislation. Therefore, we interpret subsections 5 and 6 as requiring a six step post-recovery

procedure when the parties themselves cannot agree upon a division of the recovery expenses. In working through this step-by-step procedure, the *Franges* facts will be employed for illustrative purposes.

## I. APPORTIONMENT PERCENTAGE

The statutory language of subsection 6 makes it clear that "expenses of recovery" include costs plus reasonable attorney fees. Therefore, the trial court must first determine what would be a reasonable attorney fee before dividing that fee between the attorneys for the plaintiffs.

As the statute indicates, if the division of attorney fees has been agreed upon or stipulated to by counsel, then as long as the fee percentage of recovery is not excessive under the guidelines of GCR 1963, 928, the agreement will govern the division of fees.[16] However, if there is no such

---

[16] GCR 1963, 928, provides:

".1 In any claim or action for personal injury or wrongful death based upon the alleged conduct of another, in which an attorney enters into an agreement, express or implied, whereby his compensation is dependent or contingent in whole or in part upon successful prosecution or settlement or upon the amount of recovery, the receipt, retention, or sharing by such attorney, pursuant to agreement or otherwise, of compensation which is equal to or less than the fees scheduled in subrule 923.2 is deemed to be fair and reasonable. The receipt, retention, or sharing of compensation which is in excess of such scheduled fees shall be deemed to be the charging of a 'clearly excessive fee' in violation of Canon 2, DR 2-106(A) of the Code of Professional Responsibility and Canons.

".2 The following is the schedule of reasonable fees referred to in subrule 928.1:

"(1) Not to exceed 40% of the first $5,000 recovered, not to exceed 35% on the next $20,000 recovered, not to exceed 25% on the next $225,000 recovered, not to exceed 20% on the next $250,000 recovered, and not to exceed 10% on any amount recovered over $500,000.

"(2) Alternatively, the attorney and client may agree to a contingent fee of one-third of the entire recovery that does not exceed $250,000 and 20% of the next $250,000, and not to exceed 10% of any amount recovered over $500,000.

".3 The percentages referred to in subrule 928.2 shall be computed

agreement, the attorney fees "shall be divided among the attorneys * * * as directed by the court".

In *Kroll, supra,* 295, Justice WILLIAMS set forth succinctly the factors to be considered by the trial court in dividing attorney fees:

"The court in making the division should consider the value of the services performed by attorneys, the agreement each attorney had with his client, and the necessity of ensuring that attorneys working on a contingent fee basis are compensated sufficiently to ensure that the incentive to take third-party actions on such a fee basis is protected. If the total reasonable attorneys' fees determined by the court are less than the sum of the amounts originally agreed to by the attorneys and their clients, the fees of both attorneys should be appropriately reduced, assuming the insurer's attorney contributed in the preparation and trying of the suit."

In *Franges,* the parties do not dispute the division of fees or the reasonableness of expenditures.[17]

---

on the net sum recovered after deducting from the amount recovered all disbursements properly chargeable to the enforcement of the claim or prosecution of the action. In computing the fee, the costs as taxed and any interest included in or upon the amount of a judgment, shall be deemed part of the amount recovered.

".4 An attorney may enter into contingent fee arrangements calling for lower percentages or for less compensation than that set forth by subrule 928.2.

".5 An attorney shall advise his client, before entering into a contingent fee arrangement, that attorneys may be employed under other fee arrangements whereby the attorney is compensated for the reasonable value of his services, such as on an hourly or per diem basis. The method of compensation utilized by any individual attorney remains the attorney's option and this rule does not require any attorney to accept compensation in a manner other than he chooses.

".6 All contingent fee arrangements entered into by an attorney with his client shall be in writing and a copy thereof provided to the client.

".7 This rule does not apply to agreements reduced to writing before May 3, 1975." (Added May 2, 1975.)

[17] The attorney fees in these three cases do not have to comply with the guidelines of GCR 1963, 928, *supra,* since the rule does not apply to agreements reduced to writing before May 3, 1975.

The total cost of recovery amounted to \$40,807.17.

Once the total cost of recovery is ascertained, the division of those expenses between the plaintiffs must be determined. Since subsection 6 requires the expenses of recovery to be apportioned between the insurer and the employee, the first step is to determine what percentage of the gross recovery the total expenses of recovery represent. This "apportionment percentage" is computed by dividing the gross recovery into the total cost of recovery:

$$\frac{\text{Total cost of recovery } \$40,807.17}{\text{Gross recovery of } \$120,000.00} = \text{Apportionment Percentage of } 34.005975\%$$

## II. INSURER'S REIMBURSEMENT

The trial court must then determine the amount to reimburse the insurer for compensation previously paid. The insurer in *Franges* had paid \$27,184.03 in compensation benefits as of the date of settlement:

Insurer's Reimbursement      \$ 27,184.03

## III. APPORTIONMENT OF EXPENSES FOR REIMBURSEMENT INTEREST

The insurer's portion of the costs of recovery representing its reimbursement interest is determined by multiplying its reimbursement recovery by the apportionment percentage:

| | |
|---|---|
| Insurer's Reimbursement | \$ 27,184.03 |
| Apportionment Percentage | × .34005975 |
| Insurer's Share of Cost of Reimbursement Recovery | \$ 9,244.19 |

IV. Employee's Recovery

By statute the amount remaining after reimbursement is received by the employee, his dependents or personal representative. Thus, the total recovery less the insurer's reimbursement equals the employee's recovery:

| | |
|---|---|
| Gross Recovery | $120,000.00 |
| Insurer's Reimbursement | − 27,184.03 |
| Employee's Recovery | $ 92,815.97 |

V. Apportionment of Expenses for Employee's Recovery

This portion of recovery expenses is determined by multiplying the balance of the recovery (the employee's recovery) by the apportionment percentage. Although the insurer may ultimately receive the benefit, this share of recovery expenses is initially borne by the employee since he initially receives the benefit:

| | |
|---|---|
| Employee's Recovery | $ 92,815.97 |
| Apportionment Percentage (34.005975) | × .34005975 |
| Employee's Share of Cost of Recovery | $ 31,562.98 |

VI. Insurer's Future Credit

By statute, the dollar amount actually received by the employee, his dependents or personal representative is treated as a credit against any future compensation the employer or insurer would have been required to pay but for the third-party recovery. Therefore, the total recovery less the insurer's reimbursement and the employee's share of cost of recovery equals the insurer's future credit:

| | |
|---|---|
| Gross Recovery | $120,000.00 |
| Insurer's Reimbursement | − 27,184.03 |
| Employee's Share of Cost of Recovery | −31,562.98 |
| Insurer's Future Credit | $ 61,252.99 |

The cost of recovery amount deducted in the example above does not include the insurer's share of cost of reimbursement recovery (see III, *supra)* since that dollar amount is paid out of the insurer's reimbursement. The inclusion of that sum of $9,244.19 in the cost of recovery subtraction would amount to a double subtraction of the insurer's share of cost of reimbursement recovery. Such a procedure would disadvantage the insurer by further reducing the amount of the insurer's future credit, thereby resulting in earlier exhaustion of the future credit and earlier resumption of the insurer's liability to pay compensation benefits.

### VII. APPORTIONMENT OF RECOVERY EXPENSES FOR FUTURE COMPENSATION CREDIT

Along with the actual recovery which benefits the employee, an interest which benefits the insurer is discernible at the time of settlement or judgment. That contingent future interest[18] is the dollar amount recovered by the employee after payment of recovery costs and credited to the insurer as advance payment of future compensation benefits. In fact, this contingent interest begins to accrue and to vest the first day after settlement, provided the employee would have qualified for continued compensation but for the third-party tortfeasor recovery.

Therefore, we decide that when and as the insurer's contingent interest becomes a liability but

[18] We do not use the language "contingent future interest" in the traditional property law context. We use this language as a descriptive phrase characterizing the insurer's future compensation credit.

for the third-party recovery, the insurer must reimburse the employee for the expenses of recovery chargeable to that amount. This shall be accomplished by multiplying each credit as it accrues by a second apportionment percentage to arrive at an amount the insurer must then pay to the employee.

This second apportionment percentage is computed by dividing the employer's or insurer's future credit into the employee's share of cost of recovery.

Employee's Share of Cost of Recovery

$$\frac{\$31,562.98}{\substack{\text{Employer's-Insurer's} \\ \text{Future Credit} \\ \$61,252.99}} = \begin{array}{l} \text{Apportionment Percentage} \\ \text{for reimbursement to} \\ \text{employee for cost of} \\ \text{recovery} \\ 51.52888\% \end{array}$$

According to the existing order of the Worker's Compensation Bureau, employee Franges is to receive an award of $104 per week for the rest of his life or until his disability ceases. Thus, each week Franges is entitled to receive compensation benefits but for the third-party recovery, the insurer must pay the following to the employee:

Employee's Compensable Wage Loss $ 104.00
Apportionment Percentage
   (51.52888%)                              × .5152888
Reimbursement to Employee by
   Insurer for Cost of Recovery   $      53.59 per week[19]

Until the future credit is exhausted, the same formula applies to all other claims compensable under the Worker's Disability Compensation Act.

---

[19] The insurer's future credit is still reduced on a weekly basis by the amount of compensation benefits the employee would have received but for the third-party recovery.

Thus, with employee Franges, the insurer's future credit of $61,252.99 would be reduced on a weekly basis by $104, the weekly compensable wage loss and by any other claims compensable under the act.

The insurer will reimburse the employee an amount equal to any of the employee's future expenses which are compensable under the act multiplied by the second apportionment percentage, the apportionment percentage for reimbursement to the employee for cost of recovery.

## CONCLUSION

The foregoing seven steps are to be applied to the two other cases under consideration. These cases are remanded to the trial court for a redivision of the respective recoveries consistent with this opinion. This opinion and its apportionment formulae are to be applied prospectively. Only those cases pending on appeal in which this issue has been specifically raised are subject to this determination. Remanded for further proceedings; jurisdiction is retained.[20]

No costs, neither party prevailing in full.

KAVANAGH, C.J., and WILLIAMS, FITZGERALD, RYAN, JJ., concurred with BLAIR MOODY, JR., J.

KAVANAGH, C.J. I have signed Justice MOODY'S opinion because I am now persuaded that the construction for which I wrote in *Kroll v Hyster Co,* 398 Mich 281; 247 NW2d 561 (1976), is too limited.

LEVIN, J. *(dissenting).* The essential purpose of

---

[20] Since the weekly reimbursement of recovery expenses by the insurer to the employee changes the redistribution dollar amounts each week, calculation of these amounts should be made by the respective trial courts. Any calculation by this Court would be inaccurate when the case reaches the trial court on remand. Additionally, the *Schalk* case record does not indicate the dollar amount of employee Schalk's weekly compensation award. The lack of this information makes computation of step VII, apportionment of recovery expenses for future compensation credit, impossible.

the 1952 amendment to the dual liability provision of the workers' compensation act[1] was to enable workers who had received no-fault compensation under that act to obtain the benefit of a larger amount recoverable in tort from a third party at fault. It was not intended that the worker would receive *both* no-fault compensation and a tort recovery or, in contrast with other injured persons who obtain tort recoveries, that the worker would be relieved of the impact of the legal and other expenses of recovery.

The purpose was to put the worker in as good a position as a person injured under similar circumstances who is not entitled to workers' compensation, not to put him in a considerably better position. It was sought to accomplish that purpose in a manner which would tend to reduce the overall cost of workers' compensation and avoid duplicative recoveries.

For over 25 years the provision of the 1952 amendment stating that the amount received by the worker is "an advance payment by the employer on account of any future payment of compensation benefits" has been understood to mean that until the advance payment is exhausted no compensation benefits are payable. As a result of today's decision, approximately 50% of the compensation benefit becomes payable weekly during the period of the advance payment; this is the result because expenses of recovery are generally one-third or more of a tort recovery,[2] and, therefore, one-half or more of the amount received by the worker. When the Legislature directed that the amount received by the worker be treated as

---

[1] 1952 PA 155, amending 1948 CL 413.15, reenacted by 1969 PA 317; MCL 418.827; MSA 17.237(827).

[2] See GCR 1963, 928.2(2).

an advance payment on account of *"any* future
* * * compensation benefits [emphasis supplied]"
it did not mean 50% of future payments.

I

Some workers injured in the course of employ-
ment have two possible sources of recovery, their
claim for workers' compensation benefits against
the employer, and a right of action against a third
party who caused or contributed to the injury.

The workers' compensation act originally pro-
vided that the worker had the option of proceeding
against the employer for compensation under the
act or at law against the person who caused the
injury "but not against both". If the worker
elected compensation under the act, the employer
could enforce the liability of the third person.[3]

The act was amended in 1952 to provide that
acceptance of compensation benefits no longer con-
stituted an election of remedies.[4] An injured

---

[3] 1912 (1st Ex Sess) PA 10, part III, § 15; 1915 CL 5468; 1929 CL
8454; 1948 CL 413.15.

[4] The pertinent provisions of the statute are:

"(5) In an action to enforce the liability of a third party, the
plaintiff may recover any amount which the employee or his depen-
dents or personal representative would be entitled to recover in an
action in tort. Any recovery against the third party for damages
resulting from personal injuries or death only, after deducting ex-
penses of recovery, shall first reimburse the employer or carrier for
any amounts paid or payable under this act to date of recovery and
the balance shall forthwith be paid to the employee or his dependents
or personal representative and shall be treated as an advance pay-
ment by the employer on account of any future payments of compen-
sation benefits.

"(6) Expenses of recovery shall be the reasonable expenditures,
including attorney fees, incurred in effecting recovery. Attorney fees,
unless otherwise agreed upon, shall be divided among the attorneys
for the plaintiff as directed by the court. Expenses of recovery shall be
apportioned by the court between the parties as their interests appear
at the time of the recovery." MCL 418.827; MSA 17.237(827).

The quoted language is from the Workers' Disability Compensation
Act of 1969, 1969 PA 317, effective December 31, 1969. In at least one

worker could accept or seek workers' compensation benefits and also proceed to enforce the liability of the third party.[5]

It was provided, however, that any tort recovery would, "after deducting expenses of recovery", first be applied to reimburse the employer for compensation benefits that had been paid to the worker "to date of recovery".

It was further provided that the worker's share of the recovery, the "balance" remaining after payment of the expenses of recovery and reimbursement of the employer, would be deemed an "advance payment" of future compensation benefits which would otherwise accrue, with the result that the employer is relieved of the obligation of paying such benefits. Workers' compensation again becomes payable when the advance payment is exhausted.

The issue here concerns the further provision of the 1952 amendments that the expenses of recovery, including attorney's fees, "shall be *apportioned* by the court between the parties as their interests appear *at the time of said recovery*". (Emphasis supplied.)[6]

Heretofore, the employer paid expenses of recovery in the proportion of its reimbursement to the total recovery. The remainder was apportioned to the worker.

In these consolidated cases the workers claim that because the "balance" of the recovery relieves

---

of the three consolidated cases the applicable act is the original workers' compensation act, 1912 (1st Ex Sess) PA 10, as amended, the pertinent provision of which was 1948 CL 413.15 as amended by 1952 PA 155. The provisions quoted above as (5) and (6) are the same language (except for style changes) as the 1952 amendment to that act.

[5] If the injured employee does not commence an action within one year of the injury, the employer may do so.

[6] See fn 1, *supra*.

the employer of the obligation to make future payments of compensation benefits it should pay a higher proportion or all of the expenses.

The Court agrees, and provides for a two-step allocation. Expenses of recovery are first to be apportioned, as heretofore, as of the time of recovery, between the employer and the worker based on their respective recoveries at that time. The employer is then required to reimburse the worker weekly for expenses of recovery in respect to the compensation that but for the "advance payment" would have been payable by the employer.

## II

The Court's holding manifests a conclusion that the Legislature, when it amended the dual liability provision, intended not only to put injured workers in as good a position as would be a person so injured by a third party who had not received workers' compensation benefits, but to put them in a far better position.

Franges was injured in a work-related accident. He received $88,437.02 in the aggregate: $27,184.03 from his employer's insurance carrier, and $61,252.99 from the third-party tortfeasor, or $9,244.19 more than the $79,192.83 ($120,000 tort recovery less $40,807.17 legal and other expenses of recovery) he would have received had he not been injured on the job.

The Court concludes that Franges shall receive an additional $53.59 per week so that his recovery at the end of the 11-year, 17-week advance payment period is $120,000.

Compare Franges with a person injured in a similar accident who is not entitled to receive workers' compensation benefits who recovers

$120,000 and has legal and other expenses of recovery of $40,807.17. Such a person would receive $79,192.83—not $88,437.02. He would not additionally receive $53.59 per week.

Franges has the use of $61,252.99 which if invested in United States government bonds at 8% or high-grade corporate bonds at 9 or 10% would yield an amount close to or exceeding the $104 per week. Franges' capital can thus earn more than the $104 week compensation benefit otherwise payable to him. He retains his capital. Additionally, under the Court's opinion, he receives $53.59 per week from his employer. At the conclusion of the 11 years, 17 weeks, he will again receive $104 per week.

Parenthetically, the $53.59 weekly partial compensation Franges will receive is considerably in excess of the maximum amount payable to an employee with dependents in 1952 when the dual liability provision was amended and the apportionment formula was established.

To be sure, the Legislature required an employer to share the expenses of recovery, $9,244.19 in Franges. It was apparently decided that the employer should absorb the expense of recovering the money actually returned to it although, as a result, it would not be fully reimbursed and the worker would receive, to that extent, more than he would have received had he not been injured on the job.

The apparent reason for not requiring a further contribution by the employer to the expenses of recovery is a legislative objective to reduce the overall cost of workers' compensation benefits and to avoid duplicative recoveries.

The Court asks the wrong question and, for that

reason, reaches the wrong result when it concerns itself with the "windfall" to the employer.

The saving, or "windfall", to the employer is intended. The purpose is to reduce the employer's cost as long as the worker receives no less than a similarly situated tort claimant who has no workers' compensation recovery. It is, therefore, not germane that the employer receives a windfall.

Although here there are multiple sources of recovery (workers' compensation and in tort), there is only one injury, one loss.

The tort recovery is the law's assessment of the full value of the loss. The no-fault workers' compensation benefits paid the injured worker are for the same loss, although in an amount lesser or greater than the value placed on the loss by jury verdict or compromise settlement.

It is a fundamental rule, a thread in the jurisprudence and statutory law, that an injured person can obtain only one recovery, however many have contributed to his loss.

Since the worker is entitled to only one recovery, however many feasors contributed to the loss, he is not disadvantaged by requiring full reimbursement of the employer.

The Legislature might, as in ordinary tort litigation, have reduced the amount of a worker's tort recovery by the amount paid to him by his employer; it chose, rather, to require the tortfeasor to pay the full amount of the loss and the employer to be reimbursed whatever it had paid. The employer, in a sense a co-feasor who may or may *not* have been at fault, theretofore required to pay compensation in respect to the loss without regard to fault, was relieved of primary responsibility for the loss to the extent of the third-party recovery.

It should be of no importance to the worker

whether it is the tortfeasor or the no-fault feasor who receives the benefit of the amount already paid him—whether the $27,184.03 reduces Franges' tort recovery from $120,000 to $92,815.97, as it would if the employer were a co-tortfeasor, or whether, as the workers' compensation law provides, the tortfeasor is required to pay the full amount without reduction on account of the no-fault benefits paid by the employer or contribution from it.

The Court's statement that the Legislature did not intend that the worker "bear the full burden of recovery expenses, including a recovery that excuses a compensation insurer's future obligation" because the worker would then "receive less than his full share of the recovery (after a reduction of a portion of the expenses)" ignores that generally, because of legal and other expenses, injured persons receive less than the full recovery, usually no more than two-thirds and often less.

It is the American rule that each litigant generally bears the bulk of his own legal expenses. Injured workers who hire lawyers to obtain workers' compensation pay their own legal expenses.

If an injured person recovers from one tortfeasor, say the $27,184.03 that Franges received from his employer, and then $120,000 from another, either the jury or judge is required to reduce the verdict by the $27,184.03 already received. The injured person cannot offset the $27,184.03 against a $40,807.17 attorney's fee incurred in collecting the $120,000.

The Court characterizes its approach as "a more equitable view". The question before us is not a policy question, the choice is not ours. Our duty is to determine the legislative purpose and to implement it. It is not to choose a fair or just result but,

rather, to implement a fair and just result chosen by the Legislature.

The Legislature is, of course, free to authorize tort recovery undiminished by workers' compensation benefits. We see no reason to conclude that it intended to do so.

The Court does not apportion. Rather, it would charge the entire cost of recovery to the employer. It begins, as the act provides, by apportioning part of the cost to the employer and a part to the worker, but then charges the worker's share back to the employer on an installment basis. The act simply does not provide for such a "re-apportionment". The act provides for one apportionment and not for any reapportionment or charge-back. It contemplates that the expenses will be apportioned (divided) between the parties, not that all of the expenses will be charged to one party. It contemplates that the apportionment will be made and determined "as of the time of the recovery", that the "balance" or "advance payment" will be determined after deducting the entire expenses of recovery, and that compensation payments will not again become payable in any form or manner until the "balance" or "advance payment" is exhausted.

### III

The Court gives its decision prospective effect only.[7] In so limiting its decision, the Court implicitly recognizes that it is declaring a new rule of law, a construction of the act inconsistent with the prior construction, and that the new construction

---

[7] The Court states: "This opinion and its apportionment formulae are to be applied prospectively. Only those cases pending on appeal in which this issue has been specifically raised are subject to this determination."

may defeat the reasonable expectations of those who relied on the prior construction.

Before the 1965 amendments, which generally enlarged the level of benefits, the method of apportioning the expenses of recovery between a worker and an employer who had paid benefits had become established.[8] The employer's share of the expenses of recovery was determined as of the time of recovery based on the amount of the reimbursement to the employer at that time. The employer had no further obligation to the worker until the exhaustion of the "balance" by the accrual of workers' compensation benefit payments otherwise due the worker.

The statute states that the court shall apportion the expenses of the recovery between the parties "as their interests appear at the time of the recovery". As stated in the Chief Justice's opinion in *Kroll v Hyster Co,* 398 Mich 281, 289; 247 NW2d 561 (1976), the "statute clearly provides" that such expenses are to be so apportioned "between the injured employee on the one hand and the employer/insurer on the other 'as their interests appear *at the time of the recovery'* (emphasis supplied), *i.e.,* without regard to whether future compensation benefits may or in fact do become payable".

One can, indeed, characterize being relieved from future payment of compensation benefits as an "interest". The question, however, is not whether the words can be construed to reach a result, but whether the result implements the legislative purpose.

When the act was amended in 1952 to eliminate

---

[8] See *Horsey v Stone & Webster Engineering Corp,* 162 F Supp 649 (WD Mich, 1958).

the election of remedies, workers' compensation benefits for general disability were payable for not more than 500 weeks, and for permanent and total disability for 750 weeks. The act was amended in 1965 to provide, in effect, for lifetime benefits: "Compensation shall be paid for the duration of the disability."[9]

Since both the level of benefits in 1952 and the number of weeks for which they were payable were relatively small, by comparison with the benefits now payable,[10] the "windfall" to the employer in being relieved of the obligation to make future payments was not a cause of concern or uneasiness.[11]

In the 1950's and 1960's those involved in compensation proceedings could still remember when a worker was required to elect his remedy. The accommodation reflected in the 1952 amendment allowing workers to recover compensation benefits and still seek to recover from a third party, with reimbursement to the employer, the employer bearing less than the full burden of the expenses

---

[9] 1965 PA 44, amending 1948 CL 412.9 and 412.10.

[10] In 1952 the amount payable to an injured employee without dependents could not exceed $28 per week. The 1965 act increased this to $58 per week and provided for annual increases to $61 in 1966, and to $64 in 1967. The time within which benefits were payable was increased from 500 weeks to the duration of the disability. The benefits payable to persons with five or more dependents was increased from $38 in 1952 to $93 as of 1967. Similar changes were made in the minimum benefits payable.

Subsequently, the Legislature required that the maximum weekly rate be adjusted annually to reflect changes in the average weekly wage in covered employment. See 1969 PA 317, § 355; MCL 418.355; MSA 17.237(355).

[11] If 5 years had elapsed until the recovery and the employee had thus received benefits for 260 weeks and had three dependents, the amount saved by the employer as a result of advance payment could not exceed $8,160 over the remaining 240 weeks of the 500-week maximum general disability period. If expenses of recovery were 40%, the most in additional legal expense that could be charged to the employer would be $3,264.

634 404 Mich 590 [Jan

of recovery and the worker bearing some of the burden, did not seem unfair, unjust or absurd.

As a result of the overall increases in workers' compensation benefits in and since 1965 and corresponding increases in the amount of the "windfall" to the employer, the right conferred on workers by the 1952 amendments to retain the benefit of a larger tort recovery appears less significant and the saving now realized by the employer looms larger. Now that the post-1965 doughnut is so much bigger, the relatively thin 1952 doughnut is forgotten and the focus is on the hole. The focus has shifted from the disadvantage to the worker in not being able to sue a third party to what the employer saves as a result of a tort recovery.

It may be argued that the 1965 and subsequent changes in the law enlarging the level of benefits and lengthening the period during which they are payable require a change in the construction of the apportionment language to "harmonize" the 1952 amendment with the changed circumstances resulting from the 1965 and subsequent amendments.

To reach that result, one must first conclude that the Legislature intended not only to increase the level of benefits, but also intended to so reduce the amount of the employer's reimbursement for benefits theretofore paid.

Whenever amendments of legislation such as the workers' compensation act are being considered, the overall cost of the amendment package is generally a decisive factor in the ultimate determination of what is enacted. The likelihood is that it would have been pointed out that reducing reimbursement to employers to increase the amounts received by those who recover in tort might require a reduction of benefits for those who do not

recover in tort. The conclusion would probably have been that, to avoid reduction in the level of benefits for those who do not recover in tort, there should be no further enhancement of benefits for those who do. In all events, we have no basis for concluding that the Legislature, on account of the general enlargement of benefits, intended to further enlarge the benefits payable to those who recover in tort.

IV

There is a common thread between the issue here and that presented in *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979). Workers' compensation benefits are no-fault benefits, like the no-fault automobile benefits involved in *O'Donnell.*

In the instant cases, the plaintiffs seek to retain both the no-fault benefits and the tort recoveries. In *O'Donnell,* the plaintiffs received no-fault automobile benefits because of the death of their husband and father, and seek to avoid reduction of those benefits on account of Social Security survivors' benefits paid because of his death.

The desire to have the best of both worlds is perfectly understandable. In many cases the benefits paid are totally inadequate as measured against the injuries suffered even if recovery is obtained under both the no-fault and the tort system. It is difficult to adequately price human suffering and injury.

At one time, the tort system was the only reparation program. A person who suffered loss or disability had no recourse other than an action in tort or to seek assistance as an indigent person

from a charity or under early governmental relief programs.

Workers' compensation was one of the early social welfare programs designed to meet society's obligation to compensate persons who were the happenstance victims of an increasingly mechanized and mobile society. Many programs followed, including Social Security (not only for old age but for disability and survivors), and now mandatory automobile liability insurance with a shift from complete reliance on the tort system to no-fault benefits for work loss and medical expense and a continued right of recovery above a threshold in tort.

It is the legislative judgment that the expansion of these various social welfare programs, whether financed through specific taxes (such as Social Security), general tax revenues, or mandatory employers' or users' contributions in the form of insurance premiums, should be rationalized with the tort reparation system and other programs to avoid duplication and to keep the cost of reparations within limits that consumers and those who work can afford and are willing to pay for the support of those who cannot as a result of injury or other misfortune.

In an attempt to deflect the legislative effort to rationalize income maintenance payments for injured and disabled persons and survivors, and in an effort to minimize the impact on them of the substantial costs of tort recovery, those who represent their interests have sought the aid of the courts.

In *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975), we rejected the contention that the employer should not be reimbursed for past compensation payments out of the

portion of a third-party tort recovery attributable to "pain and suffering".

In *O'Donnell,* we hold that the provision of the no-fault motor vehicle liability act requiring reduction of no-fault benefits by Social Security survivors' benefits is constitutional.

Plaintiffs urge that these social programs should be liberally construed to enlarge the benefits payable to injured persons. A liberal construction, indeed, should be placed on the language of the no-fault workers' compensation and other laws establishing entitlement so that those it was intended to benefit do benefit. It does not detract from a liberal construction of the entitlement provisions to also liberally construe the rationalization provisions so that the legislative objective of rationalization is also implemented and not defeated by the commitment which we as lawyers, trained in the tort system, have to that system, or a concern that the level of no-fault benefits inadequately compensates injured persons.

The legislative purpose, in the instant case, to rationalize governmentally required income maintenance payments with the tort system is clear and it is our duty to accept and implement that legislative judgment.

## V

The legislative judgment was that a worker, such as Franges, would be entitled to the full amount of a tort recovery, less the expenses of recovery, but that he was not entitled to both workers' compensation benefits and a tort recovery. A worker who could recover from a third party should not be disadvantaged because he received workers' compensation benefits. He

should be entitled to recover from the third party just as if he were not injured in the course of employment. He should not be worse off because he was eligible for workers' compensation benefits. But it was also the Legislature's judgment that he should not be able to obtain both. He should not be better off. He should not be able to keep both the tort recovery and his workers' compensation benefits.

The amount paid by the employer, which in tort litigation would have reduced the amount payable by the third party, should instead be paid to the employer to reduce the overall cost of workers' compensation, and at the same time to eliminate duplicative recovery by the worker. Since this cofeasor, in contrast with co-tortfeasors generally, receives in hand the return of the money which he had paid, he should, to that extent, contribute to the cost of recovery. The determination of the amount to be contributed by the employer to the expenses of recovery was to be made as of the time of recovery based on the employer's reimbursement at that time, and it was not contemplated that any contribution to the expenses of recovery would become payable by reason of the saving to the employer as a result of being relieved of future compensation payments.

We would reverse in each of these consolidated cases and remand for further proceedings consistent with this opinion.

COLEMAN, J., concurred with LEVIN, J.

COLEMAN, J. *(dissenting)*. Although I signed the opinion of Justice WILLIAMS in *Kroll v Hyster Co*, 398 Mich 281; 247 NW2d 561 (1976), in which the Court was evenly divided (2 to 2), and which is inconsistent with Justice LEVIN's opinion in the case at bar, I am now convinced that the logic and the law of Justice LEVIN's opinion is correct.