NELLIGAN v GIBSON INSULATION COMPANY

Docket No. 127763. Submitted January 15, 1992, at Lansing. Decided March 16, 1992, at 9:10 A.M.

David R. Nelligan was awarded workers' disability compensation for a dust disease that arose out of and in the course of his employment with Gibson Insulation Company. The hearing referee ordered the Silicosis, Dust Disease, and Logging Industry Compensation Fund to reimburse Gibson for all sums paid in excess of $12,500, excluding payments made pursuant to §§ 315, 319, and 345 of the Workers' Disability Compensation Act. Nelligan also filed a third-party claim that was settled before May 8, 1984, the date § 531(3) of the WDCA became effective. An agreement was reached in April 1989 regarding distribution of the proceeds from the settlement of the third-party action. Nelligan was to reimburse Gibson approximately $12,500 for weekly compensation it had paid, subject to an offset for the expenses of recovery, which resulted in the payment to Gibson of $8,212.50. Gibson then sought full reimbursement from the fund for all the weekly benefits paid in excess of $12,500, the statutory threshold amount. The fund issued a reimbursement check for $8,212.50 less than the amount to which Gibson claimed it was entitled. Gibson appealed to the Workers' Compensation Appeal Board, arguing that the $8,212.50 it received from the third-party recovery should not be considered in determining whether it had paid the statutory threshold of $12,500 to Nelligan and that the fund must reimburse Gibson for any additional payments pursuant to MCL 418.531(1); MCL 17.237(531)(1). The WCAB agreed that the fund should be allowed to deduct or offset the $8,212.50. Gibson appealed by leave granted.

The Court of Appeals held:

The WCAB correctly allowed the fund to deduct the $8,212.50. The fund is not entitled to seek reimbursement from the employee for any recovery obtained by the employee in a third-party action under MCL 418.827; MSA 17.237(827) before May

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 303, 429, 433, 434, 659.
See the Index to Annotations under Dust; Workers' Compensation.

8, 1984, and, generally, may not take a credit against any proceeds from a third-party recovery obtained before May 8, 1984, that are turned over to the employer or carrier as reimbursement for compensation previously paid or that are treated as advance payments for future benefits. However, an employer who is reimbursed pursuant to § 827(5) from a third-party recovery obtained before May 8, 1984, may not obtain reimbursement from the fund, pursuant to § 531(1), until the employer shows that it has suffered an out-of-pocket loss exceeding $12,500 after subtracting any monies recouped, or which it is entitled to recoup, from the third-party recovery.

Affirmed.

WORKERS' COMPENSATION — SILICOSIS, DUST DISEASE, AND LOGGING INDUSTRY COMPENSATION FUND — THIRD-PARTY ACTIONS — REIMBURSEMENT.

An employer may look to the Silicosis, Dust Disease, and Logging Industry Compensation Fund for reimbursement of all workers' compensation paid to an employee in excess of $12,500 for disability or death from silicosis or other dust disease or for death or disability arising out of and in the course of employment in the logging industry where the personal injury was incurred before July 1, 1985; amounts paid or payable for medical and hospital care, rehabilitation, and death expenses are not to be included in determining whether the $12,500 threshold has been attained, and any money recouped by the employer as a result of a third-party recovery by the employee must be deducted in determining whether the employer in fact has suffered an out-of-pocket loss of $12,500 (MCL 418.315, 418.319, 418.345, 418.531[1],[3], 418.827[5]; MSA 17.237[315], 17.237[319], 17.237[345], 17.237[531][1],[3], 17.237[827][5]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Ray W. Cardew, Jr.,* Assistant Attorney General, for the Silicosis, Dust Disease, and Logging Industry Compensation Fund.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *David J. Berge*), for Gibson Insulation Company.

Before: REILLY, P.J., and MACKENZIE and WEAVER, JJ.

Reilly, P.J. The employer, Gibson Insulation Company, appeals by leave granted from an order of the Workers' Compensation Appeal Board. We affirm.

Plaintiff David R. Nelligan was awarded workers' disability compensation benefits for a dust disease that arose out of and in the course of his employment. The date of injury was determined to be July 2, 1981. By order mailed December 7, 1982, defendant Silicosis, Dust Disease, and Logging Industry Compensation Fund (the fund) was directed by the hearing referee to reimburse Gibson for "all sums paid . . . exclusive of sums paid or payable pursuant to §§ 315 [medical and hospital care], 319 (rehabilitation) and 345 [death expenses], in excess of $12,500." The hearing referee specifically stated that he was not addressing any entitlement of the fund to reimbursement from any possible recovery realized by the employee in any third-party claim under MCL 418.827; MSA 17.237(827), *Franges v General Motors Corp,* 404 Mich 590; 274 NW2d 392 (1979), and *Revard v Johns-Manville Sales Corp,* 111 Mich App 91; 314 NW2d 533 (1981). Because the hearing referee did not determine its rights regarding a third-party recovery as requested, the fund filed a claim of appeal with the wcab on December 17, 1982. Neither Gibson nor the fund appealed the award to plaintiff.

While his compensation claim was pending, the plaintiff filed a third-party action. The lawsuit was settled sometime before May 8, 1984, through a series of recoveries from the respective tortfeasors.

No compensation was paid to plaintiff before the hearing referee's decision. During the pendency of the appeal, Gibson paid weekly compensation benefits as required by MCL 418.862; MSA 17.237(862). After plaintiff's death in November

1987, Gibson voluntarily paid weekly death benefits to plaintiff's widow until April 12, 1989. The fund agreed to reimburse Gibson for those payments.

Apparently an agreement was reached in April 1989 regarding the distribution of the proceeds from the third-party settlement. According to the agreement, Gibson was to be reimbursed approximately $12,500 for the weekly compensation benefits paid, subject to the *Franges*[1] offset for the expenses of recovery, which resulted in the payment to Gibson of $8,212.50. Gibson sought full reimbursement from the fund for all the weekly benefits paid in excess of $12,500. The fund then issued a reimbursement check to Gibson in the amount of $43,569.35, which was $8,212.50 less than the amount to which Gibson claimed it was entitled.

The sole issue presented to the WCAB was whether the $8,212.50 received by Gibson from the plaintiff's third-party recovery was to be considered in determining whether the employer had paid the statutory threshold of $12,500 to the employee, triggering the fund's obligation to reimburse the employer for any additional payments pursuant to MCL 418.531(1); MSA 17.237(531)(1).[2]

Gibson argued that because the plaintiff's third-party circuit court action was settled before May

[1] *Frangesi v General Motors Corp,* 404 Mich 590; 274 NW2d 392 (1979).

[2] MCL 418.531(1); MSA 17.237(531)(1) provides in pertinent part:

In each case in which a carrier including a self-insurer has paid, or causes to be paid, compensation for disability or death from silicosis or other dust disease . . . to the employee, the carrier including a self-insurer shall be reimbursed from the silicosis, dust disease, and logging industry compensation fund for all sums paid in excess of $12,500.00 for personal injury dates before July 1, 1985, . . . excluding payments made pursuant to sections 315,319,345, and 801(2), (4), and (5) which have been paid by the carrier including a self-insurer as a portion of its liability.

8, 1984, the effective date of MCL 418.531(3); MSA 17.237(531)(3), the fund was not entitled to take credit for any reimbursement attributed to that settlement.[3] The fund contended that because Gibson had been reimbursed $8,212.50 from the third-party recovery, Gibson was only "out-of-pocket" a net amount of $4,287.50, not $12,500 as mandated by § 531(1). Therefore, the fund argued, it should be allowed to deduct or offset $8,212.50 from the amount claimed by Gibson. Otherwise Gibson would obtain a double recovery with respect to the $8,212.50, contrary to the intent of § 531(1).

In March 1990, the WCAB released its decision in favor of the fund:

> It is not our holding that the [fund] has a right to credit, but rather that it has no obligation to reimburse defendant [Gibson] until defendant has paid $12,500 out of pocket, after subtracting applicable credits, offsets, and reimbursements.

We agree with the decision of the WCAB.

This Court has previously held in *Mead v Peterson-King Co,* 24 Mich App 530; 180 NW2d 304 (1970), that § 827 of the Workers' Disability Compensation Act (the act) permitted only the employer or its compensation carrier to be subrogated to the rights of the employee against a third-party tortfeasor.[4] The Court ruled that under appropri-

---

[3] MCL 418.531(3); MSA 17.237(531)(3) provides:

All of the funds under this chapter shall have a right to commence an action and obtain recovery under section 827.

[4] MCL 418.827(5); MSA 17.237(827)(5) provides in part:

Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or carrier for any amounts paid or payable under this act to date of recovery and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

ate circumstances, the employer or its carrier may treat the employee's net recovery from an action against a third party as a credit to offset future compensation payments, but the Second Injury Fund was not entitled to such a credit. See also *Revard, supra* (the fund has no right of intervention).

Through the enactment of § 531(3), effective May 8, 1984, the right to intervene in a third-party action and to assert a lien against any recovery was extended to the various funds created by the act. The funds are now entitled to share in any recovery obtained by the employee after May 8, 1984, regardless of the date of the injury. *Grogan v Manistique Papers, Inc,* 154 Mich App 454; 397 NW2d 825 (1986). The funds' right to reimbursement under § 531(3) is more than a mere change in remedy or procedure. Because § 531(3) created a new right to seek reimbursement from the employee, a right to which the funds were not previously entitled, § 531(3) is to be applied prospectively only. *Shoup v Johns-Manville Sales Corp,* 142 Mich App 189; 369 NW2d 470 (1985).

Gibson, in reliance on these rulings, argues that the fund was not entitled to any benefit from Gibson's reimbursement from the plaintiff because plaintiff obtained his third-party recovery before May 8, 1984, and that the date of distribution of those proceeds is irrelevant.

We agree with the prior rulings of this Court that the funds created by the act are not entitled to seek reimbursement from the employee for any recovery obtained by the employee in a third-party action under § 827 before May 8, 1984. We also agree that, generally, the funds may not take a credit against any proceeds from a third-party recovery obtained before May 8, 1984, that are turned over to the employer or carrier as reim-

bursement for compensation previously paid or that are treated as advance payments for future benefits.

However, we are confronted here with the situation where the fund is required by § 531(1) to reimburse the employer "for all sums paid in excess of $12,500.00." Thus, the narrow question presented to us is whether the fund's obligation to reimburse the employer under § 531(1) extends to sums that have been paid out by the employer, but have been subsequently recouped, or which the employer is entitled to recoup, from a third-party recovery obtained before May 8, 1984, pursuant to § 827(5). The interplay of §§ 531(1), 827(5), and 531(3) has not previously been addressed by our appellate courts.

In construing the legislative intent with respect to the interaction of these provisions, we are guided by the following principles:

> A statute may be judicially construed if the language used is ambiguous or the statute is susceptible of two or more meanings. The primary rule of statutory construction is to determine and effectuate the Legislature's intent. Toward that end, statutory language should be given a reasonable construction considering the purpose of the statute and the object sought to be accomplished. An act must be read in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, a harmonious and consistent enactment as a whole. Statutes are to be construed so as to avoid absurd consequences. [*King v Director of the Midland Co Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977). Citations omitted.]

See also *Feld v Robert & Charles Beauty Salon,* 174 Mich App 309; 435 NW2d 474 (1989), rev'd on other grounds 435 Mich 352 (1990).

Moreover, it is mandatory, if possible, to construe an act as a whole, thus avoiding the construction of one provision in such a manner as to negate another. *Franges, supra* at 611. We are also aware that the opinion of the WCAB should be given due deference because the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513; 158 NW2d 473 (1968).

Applying those principles to this case, we are convinced that the WCAB's decision correctly reflects the intention of the Legislature and effectuates the purposes of the act as it was written before the enactment of § 531(3).

The fund was created to assuage the burden on Michigan employers who are required by the act to compensate employees who suffer certain diseases indigenous to their industries. *Stottlemeyer v General Motors Corp,* 399 Mich 605, 611-612; 250 NW2d 486 (1977). The act provides that after an employer has paid weekly benefits totaling $12,500 to an employee, the employer continues to pay benefits, but may look to the fund for reimbursement of all sums paid in excess of $12,500. The burden is on the employer to show that it has paid the maximum $12,500 and is entitled to reimbursement from the fund. See *Cotton v Campbell, Wyant & Cannon Foundry,* 57 Mich App 52, 57-58; 225 NW2d 187 (1974).

If we were to preclude the fund from considering money recouped by the employer from another source when determining whether sums have been paid for weekly benefits in excess of $12,500, we would allow some employers to effectively avoid the mandate of § 531(1) and render it meaningless.

We believe such a result would be contrary to the Legislature's intent in creating the fund. Accordingly, we conclude that those employers who are reimbursed from a third-party recovery should not be permitted to obtain reimbursement from the fund until they show that they have suffered an out-of-pocket loss exceeding $12,500 after subtracting any monies recouped, or which they are entitled to recoup, from the third-party recovery.[5] See *Cotton, supra,* and *Miskowski v McNeil Corp,* 576 F Supp 553 (ED Mich, 1983).

The record does not disclose the total amount of plaintiff's recovery, or the type or total amount of benefits paid by Gibson. However, Gibson does not contend that the $8,212.50 it received was reimbursement for medical care, MCL 418.315; MSA 17.237(315), rehabilitation, MCL 418.319; MSA 17.237(319), or burial expenses, MCL 418.345; MSA 17.237(345). Rather, it appears from the record that Gibson reached an agreement regarding the distribution of funds from the third-party action after paying $12,458.83 in death benefits to plaintiff's widow under MCL 418.321; MSA 17.237(321). Although the fund had agreed to reimburse the employer for death benefits paid to plaintiff's widow, the trustees of the fund may reimburse the employer only an amount that is appropriate. MCL 418.541; MSA 17.237(541). We agree with the WCAB that because Gibson recouped $8,212.50 of the approximately $12,500 it claimed to have paid in death benefits, its true loss was only $4,287.50. Therefore, the trustees, in accordance with the mandate of § 531(1), properly refused to reimburse Gibson the amount of $8,212.50.

---

[5] We recognize that the employer, Gibson, apparently applied for full reimbursement from the fund in 1988, but did not receive the disbursement from the third-party recovery until 1989. However, we do not believe that these facts affect the outcome of this case.

The ruling of the WCAB in favor of the fund is affirmed.