GRISWOLD v SEALED POWER CORPORATION (ON REMAND)

Docket No. 152661. Submitted May 3, 1994, at Lansing. Decided July 18, 1994, at 9:15 A.M.

William F. Griswold sought worker's compensation benefits from Sealed Power Corporation and its insurer, Liberty Mutual Insurance Company, after receiving sickness and accident benefits and pension benefits. The employer and the insurer agreed to pay worker's compensation benefits, and the Silicosis, Dust Disease, and Logging Industry Compensation Fund agreed to reimburse the employer and the insurer pursuant to MCL 418.531(1); MSA 17.237(531)(1), but a dispute arose concerning whether the fund must commence reimbursement after $12,500 in worker's compensation benefits have been paid or after $12,500 in worker's compensation benefits and other benefits subject to coordination pursuant to MCL 418.354; MSA 17.237(354) have been paid. A hearing referee of the Bureau of Worker's Disability Compensation decided that reimbursement would commence once $12,500 in worker's compensation benefits only have been paid. The Worker's Compensation Appeal Board affirmed that decision. The Court of Appeals denied the employer and the insurer leave to appeal. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 439 Mich 1009 (1992).

On remand, the Court of Appeals *held*:

Benefits coordinated pursuant to § 354 cannot be used in computing the threshold amount of worker's compensation benefits for silicosis or other dust disease that must be paid by an employer or its insurer before reimbursement by the Silicosis, Dust Disease, and Logging Industry Compensation Fund can begin as provided by § 531(1). The employer or its insurer must have an out-of-pocket loss exceeding the threshold amount before reimbursement can begin.

Affirmed.

REFERENCES

Am Jur 2d, Workers' Compensation § 456.
See ALR Index under Workers' Compensation.

WORKER'S COMPENSATION — SILICOSIS, DUST DISEASE, AND LOGGING
    INDUSTRY COMPENSATION FUND — REIMBURSEMENT.
    Other benefits coordinated with worker's compensation benefits
        pursuant to MCL 418.354; MSA 17.237(354) are not to be
        considered when determining whether an employer or its in-
        surer has paid the amount of worker's compensation benefits
        for silicosis or other dust disease required by MCL 418.531(1);
        MSA 17.237(531)(1) for commencement of reimbursement of the
        employer or its insurer by the Silicosis, Dust Disease, and
        Logging Industry Compensation Fund (MCL 418.531; MSA
        17.237[531]).

*Cholette, Perkins & Buchanan* (by *Stephen C. Oldstrom*), for Sealed Power Corporation and Liberty Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for the Silicosis, Dust Disease, and Logging Industry Compensation Fund.

ON REMAND

Before: HOOD, P.J., and CAVANAGH and D. A. TEEPLE,* JJ.

PER CURIAM. This case has been remanded by the Supreme Court for consideration as on leave granted. 439 Mich 1009 (1992). Defendant Sealed Power Corporation appeals a decision of the Worker's Compensation Appeal Board affirming the decision of a hearing referee and finding that the Silicosis, Dust Disease, and Logging Industry Compensation Fund was required to reimburse defendant only after defendant had actually paid $12,500 in worker's compensation benefits to plaintiff Griswold. We affirm.

Plaintiff took a voluntary retirement from his

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

employment with defendant. From October 16, 1984, through February 24, 1985, plaintiff received sickness and accident benefits totaling $3,482.83. On March 1, 1985, plaintiff began receiving a pension from defendant in the amount of $688.88 a month.

Plaintiff sought worker's compensation benefits. Defendant agreed to pay benefits, and the fund agreed to reimburse defendant pursuant to MCL 418.531(1); MSA 17.237(531)(1). At issue below was whether the fund was required to begin reimbursing defendant after defendant had paid plaintiff $12,500 in compensation benefits, or whether the fund was required to begin reimbursing defendant after defendant would have paid $12,500 in benefits but for the coordination allowed by MCL 418.354; MSA 17.237(354). By order mailed on May 21, 1986, the hearing referee found that the plain language of § 531(1) required that defendant be reimbursed for all compensation paid in excess of $12,500. The hearing referee ordered the fund to begin reimbursing defendant's insurance carrier, Liberty Mutual Insurance Company, after the carrier had actually paid $12,500 in weekly compensation benefits to plaintiff. The carrier would not be allowed to take credit for any benefits paid to plaintiff that could have been coordinated.

On appeal, the WCAB affirmed the decision of the hearing referee. The WCAB rejected defendant's argument that the fund was required to begin reimbursement pursuant to § 531(1) when payments to plaintiff exceeded $12,500 regardless of the source of the payments. The WCAB noted that in several of its previous cases it had determined that the fund could not set off an amount received by the employer from a third party, and that the employer was required to pay the statutory amount before it could be reimbursed. Compensa-

tion coordinated pursuant to § 354 could not be credited to satisfy the $12,500 required by § 531(1) to be paid before reimbursement could begin.

MCL 418.531; MSA 17.237(531) reads in part:

> (1) In each case in which a carrier including a self-insurer has paid, or causes to be paid, compensation for disability or death from silicosis or other dust disease, or for disability or death arising out of and in the course of employment in the logging industry, to the employee, the carrier including a self-insurer shall be reimbursed from the silicosis, dust disease, and logging industry compensation fund for all sums paid in excess of $12,500.00 for personal injury dates before July 1, 1985, and for all compensation paid in excess of $25,000.00 or 104 weeks of weekly compensation, whichever is greater, for personal injury dates after June 30, 1985, excluding payments made pursuant to sections 315, 319, 345, and 801(2), (4), and (5) which have been paid by the carrier including a self-insurer as a portion of its liability.

On appeal, defendant argues that the threshold amount specified in § 531(1) may be met by payment of worker's compensation benefits in conjunction with other benefits. The dollar amount paid to the employee, as determined by MCL 418.351; MSA 17.237(351) or MCL 418.361; MSA 17.237(361), may consist of worker's compensation benefits only, or worker's compensation benefits and other benefits specified in § 354. Regardless of the source of the funds, the dollar amount paid to the employee remains consistent even if the employer is allowed to coordinate worker's compensation benefits with other benefits pursuant to § 354. The purpose of coordination is to reduce the burden on the employer while maintaining the benefit level of the employee. Nothing indicates that by enacting § 354 the Legislature sought to increase

the burden on any employer by denying it the right to add amounts coordinated with worker's compensation benefits paid to determine the date on which the payment of a total of $12,500 in benefits occurs.

We agree with the decision of the WCAB. Although the issue raised in this case is one of first impression in this Court, the Worker's Compensation Appellate Commission addressed it in *Grigonis v Northern Boiler,* 1988 WCACO 4. In *Grigonis,* the WCAC held that benefits coordinated pursuant to § 354 could not be used to compute the threshold amount of compensation that must be paid before reimbursement can begin as provided for by § 531(1). The WCAC noted that worker's compensation benefits are distinct from other benefits paid to an employee, and the fact that worker's compensation benefits may be coordinated with other payments pursuant to § 354 does not turn these other payments into worker's compensation benefits. Worker's compensation benefits are what the employer pays to the employee after any allowable coordination has occurred; therefore, the employer or its insurance carrier must pay actual compensation in the amount specified by § 531(1) before reimbursement can begin.

We find the reasoning in *Grigonis* persuasive and adopt it in this case. That decision comports with the clear language of § 531(1). Moreover, we note that in *Nelligan v Gibson Insulation Co,* 193 Mich App 274; 483 NW2d 460 (1992), we held that before an employer can obtain reimbursement from the fund, the employer must demonstrate an out-of-pocket loss exceeding the threshold amount specified in § 531(1). Any monies recouped from a third party cannot be counted toward the threshold amount. *Nelligan* at 279-280. While *Nelligan* does not address the issue of monies saved through

coordination, it supports the WCAB's finding in this case that the employer's actual out-of-pocket loss must exceed the threshold amount before reimbursement can begin. The same result should obtain in the instant case. In order to qualify for reimbursement from the fund pursuant to § 531(1), an employer or its insurance carrier must pay an employee the statutory threshold of $12,500, consisting solely of worker's compensation benefits.

Affirmed.